ELIZABETH PADEN, APPELLEE, V. JOSIAH PADEN, AP-
PELLANT, AND

JOSIAH PADEN, APPELLANT, V. ELIZABETH PADEN,
APPELLEE.

Consolidated in the District Court.

[FILED DECEMBER 18, 1889.]

1. **Divorce**: EVIDENCE. The plaintiff in main action, or action for divorce, having sued the same defendant for divorce, setting up grievances of the same general nature as the cause of action

in this case, in the same court in the year 1883, in which action there was a trial and decree upon the merits, *held*, that no evidence of facts or conditions of a date anterior to the said date can be considered as tending to prove the cause, or any cause of action set out in the petition in the case.

2. The Evidence in support of the cause of action of *E. P. v. J. P.* examined, and *held*, not to sustain the decree of divorce.

3. The Evidence in the case of *J. P. v. E. P.* examined, and *held*, to sustain the decree of the district court.

APPEAL from the district court for Lancaster county. Heard below before BROADY, J.

*Lamb, Ricketts & Wilson*, for Josiah Paden:

Where complainant is guilty of an offense similar to that charged as the basis of the application, no relief can be given. (*Mattox v. Mattox*, 2 Ohio, 234; *Wood v. Wood*, 2 Paige [N. Y.], 108; *Horne v. Horne*, 72 N. Car., 530; *Hall v. Hall*, 4 Allen [Mass.], 39; *Handy v. Handy*, 124 Mass., 394; *Nagel v. Nagel*, 12 Mo., 53.) One guilty of a breach of the marriage vow cannot be allowed to cancel the marriage relation, or enforce rights growing out of it. (*Knight v. Knight*, 31 Ia., 451; *Clapp v. Clapp*, 97 Mass., 531; *Ryan v. Ryan*, 9 Mo., 539.) Cruel treatment, as a ground for divorce, must be unprovoked, or at least wholly disproportionate to the provocation. (*Knight v. Knight, supra; Coles v. Coles*, 32 N. J. Eq., 547; *Skinner v. Skinner*, 5 Wis., 449.) A wife's cruel treatment must not be the result of her own misconduct. (Cases last cited, and *Johnson v. Johnson*, 14 Cal., 459; *Von Glahn v. Von Glahn*, 46 Ill., 134; *Daiger v. Daiger*, 2 Md. Ch., 335; *Childs v. Childs*, 49 Md., 509; *Harper v. Harper*, 29 Mo., 301; *Richards v. Richards*, 37 Pa. St., 225.) If both parties have a right to divorce neither has. (*Hoffman v. Hoffman*, 43 Mo., 547.) The acts complained of do not constitute cruelty in the legal sense. (*Gleason v. Gleason*, 16 Neb., 15; *Shutt v. Shutt*, 71 Md., 193 [17 Atl. Rep.,

1024]; *Bailey v. Bailey*, 97 Mass., 373.)   Mrs. Paden abandoned her husband, and the latter is absolved from his agreement as to support and the conveyances. (*Shaw v. Ins. Co.*, 69 N. Y., 286; *Palmer v. Ford*, 70 Ill., 369.) The conveyance was without consideration; the wife being already bound to do all that she agreed to do as her part of the agreement. (*Whitaker v. Whitaker*, 52 N. Y., 368; *York v. Ferner*, 59 Ia., 487.)

*Pound & Burr* (*Cornish & Tibbets* on the same side filed no brief), for Elizabeth Paden, cited: *Kelly v. Kelly*, 51 Am. Rep., 732; *Avery v. Avery*, 33 Kan., 1; *Allen v. Allen*, 31 Mo., 479; *Callahan v. Callahan*, 7 Neb., 38; *Warrick v. Rounds*, 17 Id., 412; *Sycamore Co. v. Gundrad*, 16 Id., 529; *Casebeer v. Rice*, 18 Id., 203; *Powers v. Powers*, 20 Id., 529.

Cobb, J.

These causes are brought to this court by appeal from the district court of Lancaster county.

The first suit was brought by the plaintiff and appellee to procure a divorce from her husband, the defendant and appellant.

The second was brought by the plaintiff and appellant to set aside certain conveyances of real estate to his wife, the defendant and appellee, which had been made to her in the adjustment of alleged family broils and difficulties.

The evidence in the divorce proceedings was, by stipulation, made evidence in the second suit, and both were consolidated by the court below.

The plaintiff alleged that on June 30, 1861, at Oak Harbor, in Ottawa county, Ohio, she was married to defendant, and that for ten years last past the parties have been residents of Lancaster county, in this state; and that ever since their marriage she has conducted herself towards the defendant as a chaste, faithful, and obedient wife.

II. That on February 1, 1888, the defendant was guilty of extreme cruelty towards her, without any cause or provocation, in this : that having put on his overcoat to go out of the house, and for no cause whatever, became angry and began to curse and swear, and to use violent language towards plaintiff, calling her all kinds of vulgar and vile names, and taking hold of her person in a rude and violent manner, striking her with his clenched fists, he threw and knocked her to the floor, and threw his whole body and weight upon her with so much violence and force as to injure the whole side, body, and head of plaintiff, so that she was for a long time sick and sore from said injuries; and, after she had got up from the floor, he chased her about the house, jamming her in the door as she was escaping from him.

III. On the 1st day of February he was guilty of extreme cruelty towards her, without any cause or provocation on her part, in the use of violent, indecent, and profane languge and conduct, calling her " a God damned bitch," "an old whore," and other like names.

IV. In the spring of 1888, in the presence of plaintiff's daughter, he was guilty of extreme cruelty towards plaintiff, without any cause or provocation, and at divers times during that spring, at their home, in this: that he called called her " a whore," "a damned bitch," and other like names, and frequently, during said spring, struck her with his fists, and assaulted and battered her.

V. That he is a man of vicious and vulgar habits, with a quick and bad temper, of a jealous, selfish, and revengeful disposition, and has often declared that he would never live with plaintiff, nor permit her to live with him; and that on the first Monday in April, 1888, on account of his violent conduct and abusive language, she, being in fear of great bodily injuries, if not of her life, left her home, and has since lived apart from defendant, and has supported herself.

VI. That he is a man of large means and property, and
is the owner in fee of lot 5, in block 69, situate on Ninth
street, between N and M streets, in the city of Lincoln, in
said county, of the value of $8,000; also, of the home of
both parties, No. 1505 O street, in said city, worth $10,000;
also, of a tract of land of 320 acres, eight miles southeast
of Lincoln, near Cheney, in said county, worth $12,800;
and also of 80 acres, the title being in the name of his
brother-in-law, Robert L. Garten, situate near said Cheney
station, worth $3,000; and is also possessed of horses,
mules, wagons, and farming implements, worth $2,000,
and a large quantity of grain, worth $3,000—a total of
$38,800; and that she is without proper means to support
herself, or to maintain a living in the future. With
prayer for divorce and alimony, etc.

The defendant answered admitting the marriage and
residence as alleged, admitting that he owns the property
as described, but denying that the correct values were given,
and denying every other allegation of the petition.

II. For a further defense, he says that at the time re-
ferred to, in the second paragraph of plaintiff's complaint
she flew into a passion and attempted to strike him in the
first instance with a chair, without any cause or provoca-
tion on his part; that to protect himself he took the chair
away from her, whereupon she seized a heavy cane and
attempted to strike him therewith, and in order to protect
himself from injury he was compelled to take the cane
away from her, which he did without in any way injuring
her person; that thereupon she seized him with both her
hands in his beard, as she had repeatedly done before, and
threw her whole weight upon her grip in his beard, and
before he could loosen her hands pulled him to the floor;
that he denies having struck her or of using more force
than was necessary to protect himself against bodily injury
at her hands.

As to the allegations of the third and fourth paragraphs

of the petition, he cannot say whether or not he used the words charged, and therefore denies the same, but alleges that he never used profane or vulgar epithets toward her, except under the most trying circumstances, such as stated, or at times when she struck him in the face, or on his person, with some instrument or missile she might have in hand.

As to paragraph five, he denies every allegation therein, except that she left his residence on April 1, 1888.

In answer to paragraph six he alleges that the value of lot 5, block 69, city of Lincoln, does not exceed $4,000 ; his residence, No. 1505 O street, $7,000 ; the 320 acres of land referred to, $8,000 ; the 80 acre tract in the name of Morris Paden, his son, $2,400 ; the aggregate value of his personal property is $2,000—total, $23,400 ; that he is indebted to various parties and banks to the amount of $8,000, by mortgages on the above property, and has no other assets to pay them ; and that he has signed paper as surety for her, now outstanding, upwards of $5,000. He further says that she has in her own right a large amount of property and considerable income; that she has 160 acres of land near the village of Cheney, given to her by her father, with 130 acres of it under cultivation, out of which she will realize the present year $450 ; also, a house and four lots in Cheney, worth $600 ; that in the year 1874 he conveyed to her the northwest quarter of section 6, town 6, range 2 west, adjacent to the town of Geneva, Nebraska, which was paid for with his own money and is of the value of $16,000, and which defendant claims he is the owner of, excepting the legal title stands in her name ; that said land has 130 acres under cultivation, and will realize to her a rental for the current year of about $450.

He further says that on ———, 187—, he purchased with his own money, but caused to be conveyed to her, lots 11 and 12 of block 6 of the Capitol addition to the city

of Lincoln, which she still holds and owns, of the value of $5,000, and that she has personal property of the value of $300.

III. He further alleges that he has at all times conducted himself toward her as a faithful and chaste husband; that he has never used any violence towards her; that she has for some years been very nervous and excitable in temperament and dictatorial in her methods; that on the slightest provocation, and many times without any known provocation, she would fly at him, with an uplifted chair or any household implement that might be nearest to her, and attempt to inflict upon him bodily harm, and has repeatedly injured his person with a knife, poker, chair, or other missile, before he could protect himself; that he has never touched her except in cases of such attempted violence, when he has been compelled to ward off the blows by taking from her the missiles she had in hand; that whatever epithets, profane or vulgar, he has at any time used toward her, were used under the most aggravating circumstances, when she had struck him, or was pulling his beard; that for two years past and longer she has, without any cause or reason therefor, denied him the rights of a husband, and has occupied a separate room and bed in his house; that from November 26, 1883, to May 5, 1885, she, without cause or provocation, absented herself from his home, and has in other ways been derelict in her duties as a wife; with prayer that the bill be dismissed, etc.

The plaintiff replied, admitting that she was the owner of the house and four lots in the village of Cheney, and of the northwest quarter of section 6, town 6, range 2 west, adjacent to the town of Geneva, and alleges that there is a mortgage thereon of $2,000, and admitting that she is the owner of lots 11 and 12, in block 6, of the Capitol addition to the city of Lincoln, and alleges that there is a mortgage thereon of $3,000, and she denies each and every other allegation of new matter set up.

Josiah Paden exhibited an original bill against his wife, who is plaintiff in the foregoing cause, setting up that they were married in June, 1861; that up to the year 1878 four children were born to them, and who were then young; that in November, 1878, the defendant left his home, without any just cause or reason, and as a device to secure the conveyance to herself of certain of plaintiff's real property. The fact that his family must be broken up, and his children scattered abroad, unless she could be induced to return, compelled him to seek her return on any terms, and as she complained of many imaginary ills which had no foundation in fact, she demanded as a condition to her return that he convey to her the northeast quarter of the southeast quarter 27-10-6, in Lancaster county, Nebraska; also, lot 4 of subdivisions of lots 14 and 15 of block 102 of the city of Lincoln; also, lot 5 of block 31 of Dawson's addition to South Lincoln. He was not willing to convey the property to her unconditionally, but, after certain negotiations, was induced to convey the premises to her, through J. M. Ricketts, upon the terms specified in the contract executed between them November 13, 1878, as "stipulations and agreements for the purpose of adjusting and settling family difficulties and misunderstandings."

I. The parties mutually agreed and bound themselves to leave off and forever refrain from the use of vulgar, indecent, and profane language in the presence of any members of their family.

II. Josiah Paden agreed and bound himself thenceforth to refrain from abusive and threatening language towards his wife, and would in his conduct, relations, and associations with her have due regard for her health, happiness, peace, and comfort; that the happiness of his wife and children should be the aim and object of his life; that he would provide for them in as liberal a manner as his circumstances would justify, and in all family relations would

have due regard to the wishes, feelings, and opinions of his wife.

IV. That he would pay all outstanding liabilities incurred for family expenses and necessaries as rapidly as his circumstances would justify, and pay the legal expenses in adjusting the present difficulties.

V. That he would make good his promises by conveying to his wife the following real estate: The northwest quarter of the southeast quarter of section 27, of township 10 north, of range 6 east of the 6 P. M.; also, lot 4 of subdivision of lots 14 and 15 of block 102, in the city of Lincoln; also, lot 5 of block 31 of Dawson's addition to the city of Lincoln, to become the sole and separate property to the use and benefit of his wife on the violation of any or all of the stipulations by him to be performed and observed.

VI. Elizabeth Paden, in consideration of the agreements of her husband, and upon the express condition of his full compliance therewith, promised and agreed to forgive and forget all maltreatment and improper and threatening language, and all other grievances heretofore sustained of and from her husband, and return to his home and endeavor to live a happy and contented life, and perform the part of a parent and faithful wife, so far as in her power lay.

VII. That so long as he should comply with his agreements, and conduct himself as a true and upright husband, the property to be conveyed to her should be subject to his care and use, and the common benefit of their family, and the proceeds taken and enjoyed by him as though it was his own property, *provided* he should keep the taxes paid, so long as the income therefrom should be sufficient, and if insufficient, the amount received to be appropriated to the payment of taxes *pro tanto*.

VIII. She further agreed that in all cases when it might be necessary for him to protect his interests by securing and

paying off indebtedness, that she would sign with him mortgages and deeds to enable him to best manage and protect his remaining estate; or when it might be advantageous to exchange or sell and buy non-available property, she agreed to sign all necessary instruments, provided always that the property for which exchange is made, or that purchased, should be taken in the name of Josiah Paden.

The plaintiff alleges that he faithfully kept his agreements under the contract, but that the defendant, almost immediately upon the settlement, systematically set about to drive him into the commission of some overt act which would violate the spirit or letter of the contract, and complete her title to the premises, and afford her grounds for divorce. To this end she denied him a common bed, assailed him with various dangerous weapons and implements, and repeatedly inflicted upon him serious wounds and bruises, until he was, at times, forced to cry out from very pain.

In the month of March, 1883, she applied for a divorce, alleging cruelty, and vulgar and profane language. In the month of November, following, her complaint was tried in this court, which found against her and denied her application; and, for a period of two years thereafter, she, without any cause or provocation, absented herself from his home, and refused to live with him, or perform the duties of a wife; that in the month of May, 1885, she returned to his home, but soon thereafter, without any just cause or provocation, showed her former temper, and again systematically tried in every way to provoke him to some overt act which would violate the contract, by assaulting him with various weapons and missiles, and pulling his beard, inflicting on his person great pain and suffering; that for two years prior to April 1, 1888, without any just cause or reason, she refused to occupy a common bed with him, or to perform the duties of a wife; that on said day,

without any cause or provocation, she left his house, and has ever since absented herself therefrom, without any reason therefor, or without his having violated any of the terms of the contract.

The plaintiff alleges that she has violated the letter and spirit of every covenant and agreement of the contract on her part; that notwithstanding her violation of all the terms of the contract, she claims to be the real owner of the property, and refuses to reconvey it. The plaintiff, during all the period since the conveyance of the premises to her, has been in the actual possession, and by reason of the premises is entitled to have the same reconveyed to him. He prays that the deed of the parties to J. M. Ricketts, and that of Ricketts to the defendant, of said premises, be set aside, and the title quieted and settled in the plaintiff, etc.

The defendant answered, denying all the allegations of the bill not specially admitted. She admitted the marriage, and the number of children, and the contract, as stated. She alleged that she had faithfully kept all the covenants and agreements of the contract, but that the plaintiff, regardless of it, in the year 1878 commenced a systematic course of abuse and cruel treatment towards her, and continued the same for a series of years thereafter; that during the period he habitually used in the presence of his family coarse, vulgar, indecent, and profane language, and conducted himself in an obnoxious and disagreeable manner; that in violation of his agreement he used during said period obscene language towards her, and at various times used personal violence towards her, beating and striking and choking her, and otherwise maltreating her; that he carried on such treatment until she became fearful that her life was in danger, and therefore left their home in April, 1888; that in violation of his agreement, during all the time since entering into it, he has failed to pay the necessary family expenses and to suitably provide

for the family, although fully able to do so, by reason of which she has been compelled at various times to do so from her own private property.

She alleges that on November 10, 1878, he conveyed to her the property in the petition described, and on February 3, 1880, he conveyed to her by warranty deed, without conditions, the same property; that she has, since the date of the first conveyance, paid all the taxes and the expenses for the necessary care of it from her own personal property, and with her own means. She alleges that she purchased the fee simple title out of her own estate and money, by deeds from J. H. McMurtry and wife and A. G. Barnes and wife, and her title rests upon these conveyances, and not wholly upon the deed from the plaintiff; that since November 10, 1878, she has had exclusive possession of the property; that on ———, 1884, he brought an action in the district court of this county to set aside the deed to defendant, which was by him dismissed, and thereby consented to a full and quiet enjoyment of the property by defendant. She prays that the title to the real estate be confirmed to her, and that he be debarred from any claim, right, title, or interest therein, and for general relief.

The plaintiff's reply denied each and every allegation of new matter set up by defendant.

On the 21st day of February, 1889, there was a trial to the court, and the testimony of witnesses being adduced in full, the court, upon its own motion, ordered, before the argument of counsel and the consideration of the court, that this cause be consolidated with that of *Elizabeth Paden, plaintiff, against Josiah Paden, defendant,* and that all further proceedings in this, the consolidated action, be had in and under the former case, to all of which consolidation proceedings the parties respectively except.

On the 23d day of February following again came the parties, with their attorneys, and Josiah Paden in open

court, by his attorney, dismissed his cause of action, without prejudice to a future action, as to lot No. 5, in block No. 31, situate in Dawson's addition to South Lincoln, to which the defendant Elizabeth Paden excepts, and the court, having heard the arguments of counsel, and being fully advised in the premises, finds in the constituent action of *Elizabeth Paden against Josiah Paden* in favor of the plaintiff, and finds that the plaintiff, for more than six months prior to the filing of her petition herein, has been, and now is, a *bona fide* resident of Lancaster county, in this state; and finds that the parties were duly married at the town of Oak Harbor, Ottawa county, Ohio, on June 30, 1861, as set forth, and that ever since said marriage plaintiff has conducted herself toward defendant as a faithful, chaste, and obedient wife; and finds that the defendant Josiah Paden has been guilty of extreme cruelty towards plaintiff, as alleged, and all without just cause or provocation; and finds that plaintiff is entitled to a divorce as prayed for.

And the court further finds that in the constituent action of *Josiah Paden against Elizabeth Paden* there is no equity in the plaintiff's bill, and that the same should be dismissed; also, that no alimony should be granted plaintiff in the constituent action of *Elizabeth Paden against Josiah Paden,* but that the property titles be left and quieted in each party respectively, just as the parties themselves have fixed them by their contract, and that all right of dower of Elizabeth Paden to the lands and estates of Josiah Paden and all right of curtesy of Josiah Paden in the lands and estates of Elizabeth Paden should be destroyed and forever barred.

It is therefore considered and adjudged by the court that the marriage relation heretofore existing between the said Elizabeth Paden and Josiah Paden be, and the same is hereby set aside and wholly annulled, and both parties are released from the obligations of the same.

And it is considered and adjudged by the court that the plaintiff's petition in the constituent action of *Josiah*

*Paden against Elizabeth Paden* be, and the same is hereby dismissed; that the plaintiff hereby recover nothing by his said writ, and that the defendant go hence without day.

And it is further considered, adjudged, and decreed that Elizabeth Paden have, possess, and enjoy, with the right to use, sell, and dispose of at her pleasure, the following real estate, to-wit: The northwest quarter of the southeast quarter of section number twenty-seven, in township number ten north, of range number six east of the sixth P. M., Lancaster county, in this state; also, lot number four of subdivision of lots numbered fourteen and fifteen in block numbered one hundred and two of the city of Lincoln, in this state, and all other estates, either personal or real, of which she is now or may become seized, divested of all and every claim, title, or interest by curtesy or otherwise of her said husband.

And it is further considered, adjudged, and decreed that the remaining estates, either personal or real, of the said Josiah Paden, of which he is now possessed, or which he may hereafter acquire, be, and the same are, quieted and confirmed in him, divested of all and every claim of the said Elizabeth Paden by way of dower, alimony, maintenance, or otherwise, and that Elizabeth Paden recover from Josiah Paden the costs of this action, taxed at $67.45. To all of which findings and decree Josiah Paden excepted, and brought the causes to this court on appeal.

It appears from the record that in 1883 the plaintiff, in the main action, sued the defendant for divorce, in the same court, setting up grievances of the same nature as her cause of action. To that action there was a defense, on trial on the merits, and a decree for the defendant. It was doubtless the intention of counsel who drew the present complaint to confine it to causes arising since that date, and, indeed, so far as the petition is concerned, that intention seems to have been carried out. But the evidence, probably in defiance of counsel, is made to cover a longer period and a broader field.

The cause of action, as I view it, is confined to the occurrences of a single day, except in so far as the general habits, temper, and characteristics of the defendant are sought to be brought under review, either as an aggravation of his acts, or as making more plausible and specious the allegations of the plaintiff and the testimony of her witnesses.

But in reviewing the evidence, to the brief extent deemed necessary, we will be confined to that portion which supports the allegations of the petition. The plaintiff testifies as to the circumstances of the assault on her by the defendant on the first day of February, 1888, alleged in the second paragraph of her petition, and states that she does not know nor remember how the quarrel between them arose or was started; that the defendant was standing by the stove with his overcoat on, and used vulgar and indecent "swearing language," calling her names, and got her down on the floor, and undertook to throw his weight upon her, but that by reason of her being of a wiry nature, and he being bundled up, gave her a chance to get from under him, and she made for the door on the east side of the room, but he prevented her getting out, and she came through the parlor to the front door and opened it, and he resisted her, and they got between the door jambs and the door, and she got the screen open, and he did not keep her from getting out of the house; that she supposed the reason he wanted to get her into the house was to prevent the public knowing they were in a fuss, as there was no one about the house, to her knowledge, except themselves, so that she could have a witness.

Her attention being called, by counsel, to the commencement of the difficulty, and being asked where defendant caught hold of her, she replied that she did not remember; and being asked how she came to fall on the floor, she answered "through his getting her onto the floor"; she did not remember how, the excitement was so great, but she

thought from the experiences that he was intending to end her life right there, and she broke away from him; that "he threw his body and tried to press and crush her down with his hands and with his body." Being asked to give the exact language he used towards her, she answered, "*God damn*," and such language as that, and then he added words to these yet; the excitement was so great that she could not remember the real words following that, except the hard names he had been in the habit of calling her, and he called her some of those names. Upon being pressed by her counsel to pronounce those names, and being directed by the court repeatedly to answer, she replied that "she could not tell them just then, if they came to her mind before she left the witness stand, she would tell them." To the question, how badly she was hurt, she answered, "that she was hurt and got so nervous that she did not get over it for several days."

Q. Was you hurt by just being nervous?

A. I was not hurt just by that alone; I don't know as my body was really bruised, that is, to leave spots, but it was more internally than outwardly.

The defendant, when on the stand as a witness, had his attention called to the foregoing testimony, and being asked to state how that matter happened, and what there was of it, replied that at the time of the occurrence he had put on his overcoat to go out; that what the detail of the previous conversation was he did not distinctly remember, but his most definite recollection was, in regard to securing the money to pay some interest that she was owing at one or more of the banks; that after he had gone outside, the plaintiff called him back, as she was in the habit of doing when either he or the children started out to go anywhere, she called them back when she could think of something, and in this instance she recalled him, and got to talking of the matter referred to, in which he did not agree with her; and she up with a chair and raised it to strike him with,

which he took away from her by wrenching it from her hands, at the same time keeping his eye on the door to make his escape, which was common for him to do when there was a trouble of the kind, and that was the end of it when he got away. But he found she was too close for him to do that, for when he got the chair and set it back, she grabbed a heavy cane, from the corner near by, and raised that to strike witness, and when he had taken that from her, she clutched both hands into his beard and drew him down, and going herself down on the floor, before he could loosen her hands from his beard, but that he did not bear any weight upon her, and was careful in regard to that, as she drew him down; after he had loosened her hands from his beard he got right up, and she raised up and made for the dining-room door, out of which he had gone, and tried to open it; that he was sure of her purpose to go out and halloo abroad and make a public matter of it, as she had done before, and he just held her hands against the door; she then started to go through the parlor, and he followed to prevent her from opening that door, but she had it open, probably six inches, before he reached it, and had commenced an outcry; he then opened the door, and she went out, sat down upon the porch, and said, "Now I am going to have a bill," and called witness "a mean, low lived devil," and many other names of that kind; that he did not in any way touch, strike, or abuse her, except to release himself from her grasp, and that it was not his intention to hurt or injure her in any way.

There was no other witness to this performance except the parties to the suit.

These statements of the parties are conflicting in every important particular. Conceding, however, that the parties stand on an equality as to credibility and intelligence, it is not possible to say which account is true or which false. They are irreconcilable with each other and with

the average moral condition of connubial broils. In such exigency the rule of equity must follow that of the science of logic and the law of mechanics. That postulate implying relief, or seeking evolution, must fail of its purpose for the want of moral consistency or material weight.

The charge in the third cause of action, as stated, though in different language, must refer to the same transaction testified to by the parties. It is alleged to have occurred on the same day, and, if a separate and distinct charge, is without any evidence to support it whatever. Neither the plaintiff nor defendant, in their testimony, mention any other altercation of that day, or about that time, than the principal one referred to.

The testimony of the two daughters of the parties, especially that of Mistress Minnie, is outspoken and comprehensive, and is confessedly damaging to defendant in a very general way, but contains nothing tending to prove the specific allegations of the petition. The same may be said of that of the son, Morris Paden, except that his evidence is equally damaging to the plaintiff, and tends to establish the recriminations of the answer, as to her aggravating conduct towards the defendant.

As to the second action, consolidated in the court below with the cause for divorce, its aim and purpose was to set aside the deeds of Josiah Paden, through a trustee, to his wife Elizabeth, on the ground that she had failed to comply with the stipulations of the contract of November 13, 1878, to be kept and performed on her part, as heretofore set out.

While, as stated in regard to the main action, I do not consider that the alleged grounds for divorce are sufficiently proved, the plaintiff being held to the special allegations of her petition, yet I think that sufficient appears in the evidence, which by stipulation and consolidation is made applicable in both cases—that enough is there shown against the plaintiff, when considered in the second case,

wherein he is proponent—to demonstrate that he does not stand in that blameless condition, free from fault in the treatment of his wife, the defendant, from the time of making the contract to that of the trial in the court below, which is necessary to give him a standing in a court of equity, or entitle him to any part of the relief sought in the bill.

His own testimony, on the one hand, and that of his wife on the other, may be said to offset each other; but that of both daughters and the son, when allowed for their application the entire range of time from November, 1878, to the date of the trial, would tend to cast a large share of the responsibility and censure for the reprehensible condition existing between them, injuriously affecting their family, upon the husband and father. Having reached this conclusion, it is not deemed important to particularize or enlarge further upon this branch of the case. So much, therefore, of the decree of the district court as dissolved the marriage relation of the parties is reversed. So much of said decree as dismissed the bill of Josiah Paden is affirmed ; and so much of said decree as seeks and purports to settle and quiet the title of Elizabeth Paden to the property therein described, real or personal, or any rights or interests therein, and so much as seeks and purports to divest the dower interest of Elizabeth Paden in, of, or from any of the real estate of Josiah Paden, is reversed, and the consolidated action is dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.